IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DAVID NOTASH and KELLY HAMLIN,     )
                                   )
              Plaintiffs,          )
                                   )
         v.                        )      1:23cv890
                                   )
TOTAL MILITARY MANAGEMENT, INC.,   )
et al.,                            )
                                   )
              Defendants.          )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Defendant Total Military Management, Inc.'s Partial Motion to Dismiss (Docket Entry 28) and Defendants Mayflower Transit, LLC's and United Van Lines, LLC's joint Partial Motion to Dismiss (Docket Entry 26). For the reasons that follow, the Court should grant the latter Motion and should grant in part and deny in part the former Motion.

## BACKGROUND

On January 26, 2021, Plaintiffs David Notash and Kelly Hamlin (the "Plaintiffs") allegedly contracted with Defendant Total Military Management, Inc. ("TMM") to have the contents of their home packed and moved from New Mexico to North Carolina. (See Docket Entry 25, ¶¶ 10-11, 17.) Plaintiffs allege that TMM, in turn, contracted with Defendants Mayflower Transit, LLC ("Mayflower") and United Van Lines, LLC ("United") to pack and move

their belongings.  (See id., ¶¶ 10, 12, 13, 29, 52.)[1]  In that regard, Mayflower allegedly issued Plaintiffs a Bill of Lading on March 4, 2021, with a packing date, agreed pick up date, and agreed delivery date.  (See id., ¶ 12.)  On the same day, United allegedly issued Plaintiffs a Household Goods Descriptive Inventory.  (See id., ¶ 13.)  Pursuant to the alleged Bill of Lading, "Plaintiffs' household contents were packed and loaded in good order and condition" on March 4, 2021 (ostensibly by Mayflower and/or United, per the Bill of Lading and Household Goods Descriptive Inventory). (Id., ¶ 14.)  But when Plaintiffs unpacked their belongings at their final destination, they allegedly "noted that several of their household items sustained damages that were not present prior to packing and moving."  (Id., ¶ 18.)

Plaintiffs allegedly filed a claim with TMM on October 26, 2021.  (See id., ¶ 20.)  In response, TMM allegedly sent an appraiser to assess the damage, and the appraiser concluded that the goods sustained significant damage.  (See id., ¶¶ 21-22.)  TMM allegedly offered to compensate Plaintiffs "at a rate significantly

---

[1] In their memorandum in support of their Motion to Dismiss, Mayflower and United note that "Mayflower was the motor carrier who transported Plaintiffs' property" and "United, a separate carrier, had no involvement and appears to be included in this lawsuit only because a local agent mistakenly provided a United form rather than a Mayflower form when creating a household goods inventory." (Docket Entry 30 at 2 n.1.)  However, according to these Defendants, "this distinction is not relevant to the Motion to Dismiss but will become relevant on later dispositive motions." (Id.)  They request no further action with regards to United beyond dismissal of the state law claims.  (See id.)

lower than the estimated cost to repair or replace." (Id., ¶ 23.) Plaintiffs allegedly rejected that offer. (See id., ¶¶ 24-25.)

Based on the foregoing allegations, the Amended Complaint asserts claims against each Defendant for violation of the Carmack Amendment, negligence, breach of contract, and unfair and deceptive trade practices. (See id., ¶¶ 26-59.) Defendants each filed an answer to the Amended Complaint, along with the instant Motions pursuant to Federal Rule of Civil Procedure 12(b)(6). (See Docket Entries 26, 27, 28, 29.) Plaintiffs did not respond to the instant Motions. (See Docket.)

## STANDARD OF REVIEW

By local rule, "[i]f no response brief is filed within the time required . . ., the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." M.D.N.C. LR 7.3(k). Other courts similarly have recognized that:

> When a defendant's motion to dismiss a complaint states specific deficiencies that warrant dismissal, and presents supporting legal arguments, it is the plaintiff's obligation to respond substantively to address them. Failure to respond to the defendant's arguments constitutes abandonment of those claims. Any abandoned claims are subject to dismissal with prejudice.

Kitchings v. Shelton, Civ. Action No. 17-882, 2018 WL 398285, at *6 (D. Md. Jan. 12, 2018) (internal citations omitted). However, the United States Court of Appeals for the Fourth Circuit requires substantive review of even unopposed motions to dismiss. See

3

Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416 n.3 (4th Cir. 2014) ("Even though [the plaintiffs] did not challenge the motions to dismiss, we note that the district court nevertheless has an obligation to review the motions to ensure that dismissal is proper.").

A Rule 12(b)(6) motion "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, in reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom. Coleman v. Court of Appeals of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a "reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S.

4

at 556). A complaint need not contain detailed factual recitations, but must provide "the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and ellipsis omitted). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

## DISCUSSION

The Amended Complaint asserts four claims against each Defendant: (1) violation of the Carmack Amendment, 49 U.S.C. § 14706; (2) negligence; (3) breach of contract; and (4) unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1. (See Docket Entry 25.) Mayflower and United seek dismissal of all state law claims against them as preempted by the Carmack Amendment. (See Docket Entry 30 at 3.) TMM seeks dismissal of the Carmack Amendment claim, the negligence claim, and the unfair and deceptive trade practices claim. (See Docket Entry 31 at 4-12.)

## A. Carmack Amendment Liability

Mayflower and United do not contest their liability as carriers under the Carmack Amendment. (See Docket Entry 30 at 3.) But TMM contests its liability under the Carmack Amendment on the

5

grounds that it acted as a "move manager" or "broker," not a "carrier." (Docket Entry 31 at 4-6.)

The Carmack Amendment "create[s] a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 704 (4th Cir. 1993). In relevant part, the Carmack Amendment provides:

> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation . . . . That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States . . . .

49 U.S.C. § 14706(a)(1). For purposes of the Carmack Amendment, a "carrier" includes, inter alia, "a motor carrier," defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(3), (14); see also Bryant v. Core Contents Restoration, LLC, No. 7:20-CV-40, 2021 WL 1207719, at *5 (E.D.N.C. Mar. 30, 2021) ("[Section] 13102[] lists the 'Definitions' applicable for Carmack [Amendment] purposes . . . ."). In contrast, that statutory provision defines a "broker" as "a person, other than a motor carrier . . . that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or

6

arranging for, transportation by motor carrier for compensation." Id. § 13102(2) (emphasis added). "A defendant may be either a motor carrier or a broker, but it cannot be both in the same transaction." Ortiz v. Ben Strong Trucking, Inc., 624 F. Supp. 3d 567, 579 (D. Md. 2022); see also 5K Logistics, Inc. v. Daily Express, Inc., 659 F.3d 331, 335 (4th Cir. 2011) ("[T]here is no overlap in the statute between carriers and brokers . . . .") This distinction bears great importance, because "Carmack Amendment liability extends to carriers but not brokers." Auray v. Delivery by Delivery, Inc., Civ. Action No. 6:23-3155, 2023 WL 5651868, at *2 (D.S.C. Aug. 31, 2023); accord, e.g., Ortiz, 624 F. Supp. 3d at 580 n.4.

"[T]he difference between a broker and a carrier is often a blurry one," but "the key question is whether the disputed party accepted legal responsibility to transport the shipment." Auray, 2023 WL 5651868 at *2 (internal quotation marks omitted). "While the Fourth Circuit has not delineated a test for determining whether an entity is a carrier or broker, other courts consider a number of factors when determining an entity's status." Starr Indem. & Liab. Co. v. RXO Capacity Sols., LLC, No. 3:23-CV-00572, 2024 WL 2979728, at *7 (W.D.N.C. May 10, 2024), report and recommendation adopted sub nom. PCS Wireless LLC v. RXO Capacity Sols., LLC, 2024 WL 2981188 (W.D.N.C. June 13, 2024). For example, the United States Court of Appeals for the Eleventh Circuit held

7

that, in conducting this "case-specific analysis," a written document clarifying whether an entity acts as a shipper or a broker can insulate a broker from liability, but "[w]here no such writing exists, the question will depend on how the party held itself out to the world, the nature of the party's communications and prior dealings with the shipper, and the parties' understanding as to who would assume responsibility for the delivery of the shipment in question." Essex Ins. Co. v. Barrett Moving & Storage, Inc., 885 F.3d 1292, 1302 (11th Cir. 2018). The United States Court of Appeals for the Third Circuit affirmed a district court's decision considering similar factors, including:

> (1) whether the entity promised to personally perform the transport and therefore legally bound itself to transport; (2) the type of services the entity offers; (3) whether the entity held itself out to the public as the actual transporter of goods; and (4) whether the entity's *only* role was to secure a third party to ship plaintiff's goods.

Tryg Ins. v. C.H. Robinson Worldwide, Inc., Civ. Action No. 15-5343, 2017 WL 5725057, at *6 (D.N.J. Nov. 28, 2017) (emphasis in original), aff'd, 767 F. App'x 284 (3d Cir. 2019).

District courts within the Fourth Circuit likewise have looked to such factors in their own analyses. See, e.g., Starr Indem., 2024 WL 2979728 at *5; Auray, 2023 WL 5651868 at *2; Ortiz, 624 F. Supp. 3d at 579-80. Notably, courts consistently refuse to treat the name on the bill of lading as dispositive in this inquiry. See, e.g., Starr Indem., 2024 WL 2979728 at *3; Mays v. Uber

8

Freight, LLC, No. 5:23-CV-73, 2024 WL 332917, at *3 (W.D.N.C. Jan. 29, 2024); Ortiz, 624 F. Supp. 3d at 581.

Given the nature of the analysis, "the 'carrier/broker inquiry is inherently fact-intensive and not well suited to summary judgment,' let alone to a motion to dismiss." Lotte Ins. Co. Ltd. v. R.E. Smith Enters., Inc., 733 F. Supp. 3d 494, 505 (E.D. Va. 2024) (quoting Nipponkoa Ins. Co. v. C.H. Robinson Worldwide, Inc., No. 09 Civ. 2365, 2011 WL 671747, at *5 (S.D.N.Y. Feb. 18, 2011)). To that end, district courts in the Fourth Circuit often decline to determine a party's status as a broker or dealer at the motion to dismiss stage. See, e.g., Starr Indem., 2024 WL 2979728 at *7; id.; Auray, 2023 WL 5651868 at *2-3; TRG Holdings, LLC v. Leckner, No. 1:06CV411, 2006 WL 2076768, at *2 (E.D. Va. July 20, 2006).

TMM argues that the Amended Complaint's "lone allegation" labeling TMM as a carrier "fails to meet the standard established in *Iqbal* and *Twombly*." (Docket Entry 31 at 5.) Specifically, TMM contends that "other allegations in [the] Amended Complaint undermine the unsupported claim that TMM is a motor carrier." (Id.) To support this argument, TMM points to, inter alia, the Amended Complaint's allegations that (1) per the bill of lading, Mayflower, not TMM, agreed to pack, pick up, and deliver Plaintiffs' goods; (2) Mayflower and United took physical possession of Plaintiffs' goods and those goods suffered damage while in Mayflower's and United's custody; and (3) "the damage to

9

[Plaintiffs'] goods occurred as a result of TMM's failure to 'identify a moving company that had the capacity to properly carry and care for the contents which resulted in the goods being damaged or destroyed.'" (Id. at 5-6 (quoting Docket Entry 25, ¶ 33).) TMM argues that, in particular, identifying a moving company constitutes a "service that a broker–not a carrier–provides," and "the isolated claim that TMM is a motor carrier is at odds with all the other facts" alleged in the Amended Complaint. (Id. at 6.)

However, the key question to determine whether TMM acted as a broker or a carrier remains whether TMM accepted legal responsibility to transport Plaintiffs' items. See Auray, 2023 WL 5651868 at *2. To that end, the allegation that TMM failed to identify a moving company with the capacity to properly carry and care for Plaintiffs' goods does not conclusively establish whether or not TMM accepted legal responsibility to transport the shipment. Nor does the allegation that Mayflower issued the Bill of Lading resolve that question. And other allegations in the Amended Complaint plausibly suggest TMM may have accepted responsibility to transport Plaintiffs' items. For example, the Amended Complaint alleges that TMM "provides carrier services to Department of Defense personnel in such a way that it operates as a carrier." (Docket Entry 25, ¶ 35.) As previously noted, allegations that a party holds itself out as a carrier or provides carrier services to others bears on the broker/carrier determination. In addition, the

10

allegation that TMM offered to compensate Plaintiffs for their damaged goods (see id., ¶ 23) may support an inference that TMM accepted legal responsibility for safely transporting Plaintiffs' items.

Construing the Amended Complaint in the light most favorable to Plaintiffs, as required at this stage of the proceedings, see E.I. du Pont, 637 F.3d at 440, the Court should not conclude as a matter of law that TMM acted as a broker. See, e.g., Lotte, 733 F. Supp. 3d at 505. Accordingly, the Court should deny TMM's Motion to Dismiss Plaintiffs' Carmack Amendment claim (Count I).

**B. Carmack Amendment Preemption**

Mayflower and United argue next that the Carmack Amendment preempts Plaintiffs' claims for negligence, breach of contract, and unfair and deceptive trade practices. (See Docket Entry 30 at 4-8.) TMM similarly argues that, if the Court deems TMM a "carrier" liable under the Carmack Amendment, federal preemption bars the state-law claims against TMM. (See Docket Entry 31 at 11.)

A "comprehensive exercise of Congress's power to regulate interstate commerce," the Carmack Amendment "has long been interpreted to preempt state liability rules pertaining to cargo carriage, either under statute or common law." 5K Logistics, 659 F.3d at 335. "The [Carmack] Amendment's preemptive force is exceedingly broad and embraces all losses resulting from any

11

failure to discharge a carrier's duty as to any part of the agreed transportation." Brentzel v. Fairfax Transfer & Storage, Inc., No. 21-1025, 2021 WL 6138286, at *5 (4th Cir. Dec. 29, 2021) (internal quotation marks omitted).

In analyzing this issue, the Fourth Circuit has expressly stated that the Carmack Amendment preempts common law breach of contract and negligence claims against a carrier for goods lost or damaged in shipment under a bill of lading. See Shao, 986 F.2d at 706 ("Allowing a shipper to bring common law breach of contract or negligence claims against a carrier . . . conflicts with [the Carmack Amendment's] policy.")  Although the Fourth Circuit has not specifically addressed whether the Carmack Amendment preempts claims based upon a state's deceptive trade practices statute, it "has joined virtually all others in agreeing that the Carmack Amendment preempts all state law claims, whether they contradict or supplement Carmack Amendment remedies." Parramore v. Tru-Pak Moving Sys., Inc., 286 F. Supp. 2d 643, 648 (M.D.N.C. 2003) (citing Shao, 986 F.2d at 706–07); accord, e.g., German v. Bekins Van Lines, Inc., No. 3:19CV558, 2020 WL 5204046, at *4 (W.D.N.C. Sept. 1, 2020); see also Ward v. Allied Van Lines, Inc., 231 F.3d 135, 138 (4th Cir. 2000) ("The Carmack Amendment preempts a shipper's state and common law claims against a carrier for loss or damage to goods during shipment."). In light of that precedent, and as the parties do not dispute the status of Mayflower and United as

12

"carriers" subject to liability under the Carmack Amendment, the Court should dismiss Plaintiffs' state law negligence, breach of contract, and unfair and deceptive trade practice claims (Counts II-IV) as against Mayflower and United.[2]

Regarding TMM, as previously discussed, the Court should defer any determination of whether TMM acted as a "carrier" subject to Carmack Amendment liability. TMM appears to concede that if, as TMM argues, TMM qualifies as a broker, the Carmack Amendment will not preempt the state law claims against TMM. (See Docket Entry 31 at 11.) Accordingly, at this juncture, the Court should not dismiss Plaintiffs' claim against TMM for breach of contract (Count II). See, e.g., Lotte, 733 F. Supp. 3d. at 505-06 (declining to dismiss state law claims against an entity while broker/carrier status remained unresolved); Aurey, 2023 WL 5651868 at *2-3 (declining to dismiss a breach of contract claim but noting that "the Carmack Amendment could preempt this claim if it were later determined that [the defendant] acted as a carrier"). However, as discussed next, because another federal statute alternatively

---

2 Mayflower and United also maintain that, because "[t]he Carmack Amendment itself does not provide for an award of attorney's fees" (Docket Entry 30 at 8), "Plaintiffs' claims for the recovery of attorney's fees should be dismissed pursuant to Rule 12(b)(6)" (id. at 9). The Amended Complaint lacks any freestanding request for attorney's fees (see Docket Entry 25, Relief Prayer) and refers to attorney's fees only in connection with the unfair and deceptive trade practices claim (see id., ¶ 59). The dismissal of that claim obviates any need for further action by the Court on this front.

13

preempts the negligence and unfair and deceptive trade practices claims against TMM even if TMM qualifies as a broker, the Court should dismiss those claims (Counts II and IV) as against TMM.

**C. Federal Aviation Administration Authorization Act Preemption**

TMM further alternatively contends that, regardless of Carmack Amendment preemption, the Federal Aviation Administration Authorization Act (the "FAAAA"), 49 U.S.C. § 14501, preempts Plaintiffs' negligence and unfair and deceptive trade practices claims (Counts II and IV). (See Docket Entry 31 at 7-12.)[3]

The FAAAA, utilizing the same "broker" and "carrier" definitions as the Carmack Amendment, see 49 U.S.C. § 13102(2), (3), (14); see also Allied Prop. & Cas. Ins. Co. v. Dupre Logistics, LLC, No. 3:24CV46, 2024 WL 4201598, at *3 (M.D. Fla. Sept. 16, 2024) (recognizing that Section 13102 "provid[es] definitions for various terms appearing in both the FAAAA and the Carmack Amendment"), preempts state laws "related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). A state law is "related to" a carrier or broker's price, route, or service if it "'ha[s] a connection with or reference to' carrier 'rates,

---

3 Mayflower and United make a similar argument (see Docket Entry 30 at 9-10), but the court need not address that, given the recommendation of dismissal of those claims due to preemption under the Carmack Amendment.

14

routes, or services,' whether directly or indirectly." Dan's City Used Cars, Inc. v. Pelkey, 569 U.S. 251, 260 (2013) (quoting Rowe v. New Hampshire Motor Transp. Ass'n, 552 U.S. 364, 370 (2008)). "The broad preemptive scope of the phrase 'related to,' however, is not without limits." Gaines Motor Lines, Inc. v. Klaussner Furniture Indus., Inc., 734 F.3d 296, 307 (4th Cir. 2013). Put another way, "'some state actions may affect [carriers and brokers] in too tenuous, remote, or peripheral a manner to have preemptive effect.'" Id. (internal brackets and some quotation marks omitted) (quoting Rowe, 552 U.S. at 371).

The Fourth Circuit has yet to address whether and when the FAAAA preempts negligence claims against brokers and carriers. See PCS Wireless, 2024 WL 2981188, at *2 n.1 ("There is no Fourth Circuit case addressing th[e] issue [of FAAAA preemption of negligence claims against brokers]."); Crawford v. Move Freight Trucking, LLC, No. 7:23cv433, 2024 WL 762377, at *7 (W.D. Va. Feb. 20, 2024) (same). However, the three courts of appeals to consider FAAAA preemption of negligence claims agree that the FAAAA preempts such claims. See Ye v. GlobalTranz Enters, Inc., 74 F. 4th 453, 458-59 (7th Cir. 2023), cert. denied, __ U.S. __, 144 S. Ct. 564 (2024); Aspen Am. Ins. Co. v. Landstar Ranger, Inc., 65 F.4th 1261, 1268 (11th Cir. 2023); Miller v. C.H. Robinson Worldwide, Inc., 976 F.3d 1016, 1025 (9th Cir. 2020).

15

District courts in the Fourth Circuit have reached the same conclusion, finding FAAAA preemption of negligence claims against brokers arising from selection of carriers. See, e.g., Fuelling v. S&J Logistics, LLC, No. 7:22-cv-905, 2024 WL 4802709, at *4 (D.S.C. Nov. 15, 2024) (holding that the FAAAA preempted negligent selection claims against a broker because they "relate[d] directly to one of [the broker's] core services as a broker: arranging for the transportation of property by a motor carrier"); Starr Indem., 2024 WL 2979728 at *9-10 ("To the extent [the d]efendant acted as a broker, the[ negligence] claim[] fall[s] within [the d]efendant's services as a broker by challenging the adequacy of care the company took—or failed to take—in hiring [a third party] to transport the goods."); Lotte, 733 F. Supp. 3d at 507-08 ("Because a broker's core service is the selection of a suitable motor carrier to transport property, [the p]laintiff's negligent hiring claim is 'related to' [the defendant's] brokerage service."). In like fashion, district courts have applied such reasoning to treat unfair and deceptive trade practices claims as "related to" brokers' rates, routes, and services. See, e.g., CRST Dedicated Servs., Inc., v. Ingersoll-Rand Co., 194 F. Supp. 3d 426, 432-33 (W.D.N.C. 2016) (holding that the FAAAA preempted the plaintiff's unfair and deceptive trade practices claim because it "relate[d] to the negotiation of prices for the services of transporting property"); Gregory Poole Equip. Co. v. ATS Logistics Servs., Inc.,

16

No. 5:13-CV-549, 2014 WL 1053517, at *2-3 (E.D.N.C. Mar. 14, 2014) (holding that the FAAAA preempted the plaintiff's claim for unfair and deceptive trade practices because alleged provision of artificially low quotes directly related to the defendant motor carrier's rates and services).

Here, at its core, Plaintiffs' negligence claim maintains that "Defendants owed a duty based in contract to deliver . . . Plaintiff[s'] household goods without destroying or damaging property" (Docket Entry 25, ¶ 39) and this "duty was breached when the goods were damaged or destroyed by the Defendants working in tandem to deliver the goods" (id., ¶ 40). Such a claim directly relates to TMM's broker services, which include "selling, providing, or arranging for transportation by motor carrier." 49 U.S.C. § 13102(2). The same logic extends to Plaintiffs' unfair and deceptive trade practices claim, which alleges that TMM "intimated to Plaintiffs that they would be responsible for the move" (Docket Entry 25, ¶ 50) and that, "as a result, Plaintiffs entrusted their valuables to them" (id., ¶ 51), but that, "[i]instead, [TMM] contracted with Defendants [Mayflower and United] without making the relationship clear to the Plaintiffs" (id., ¶ 52). This claim similarly strikes at the core of TMM's broker services-namely, TMM's representations to Plaintiffs about how it would "arrang[e] for [the] transportation [of their goods]," 49 U.S.C. § 13102(2).

17

Under these circumstances, whether TMM qualifies as a carrier or a broker, either the Carmack Amendment or the FAAAA preempts Plaintiffs' claims against TMM for negligence and unfair and deceptive trade practices (Counts II and IV).[4]

## CONCLUSION

Regarding Mayflower and United, the Carmack Amendment preempts Plaintiffs' state law claims against them, necessitating their dismissal. Regarding TMM, the Court should not dismiss the Carmack Amendment claim at this point, but either the Carmack Amendment or the FAAAA preempts Plaintiffs' negligence and unfair and deceptive trade practices claims regardless of whether TMM qualifies as a broker or a carrier, necessitating dismissal of those claims.

**IT IS THEREFORE RECOMMENDED** that Mayflower's and United's Partial Motion to Dismiss Counts II-IV (Docket Entry 26) be **granted**.

**IT IS FURTHER RECOMMENDED** that TMM's Partial Motion to Dismiss (Docket Entry 28) be **granted in part** and **denied in part** as follows:

---

[4] TMM alternatively argues that the FAAAA preempts the negligence and unfair and deceptive trade practices claims against it as a carrier. (See Docket Entry 31 at 7-8.) Because the Carmack Amendment preempts these claims if TMM qualifies as a carrier, the Court need not address whether the FAAAA would as well.

the motion should be **denied** as to the Carmack Amendment claim (Count I) and **granted** as to the negligence and unfair and deceptive trade practices claims (Counts II and IV).

This 25th day of February, 2025.

                                /s/ L. Patrick Auld
                                  **L. Patrick Auld**
                        **United States Magistrate Judge**